

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

**AUSTIN, TEXAS**

January 18, 1947

Hon. Reed McDonald
Chief Clerk
Texas Agricultural Experiment Station
A & M College of Texas
College Station, Texas

Opinion No. V-01

Re: Use of proceeds from
sale of land and prop-
erty of an abandoned
sub-experiment station
to construct buildings
and other improvements
in connection with the
establishment of a new
sub-experiment station
on donated land.

Dear Sir:

We have carefully considered the question pro-
pounded in your letter to this department, dated Decem-
ber 17, 1946. That question, copied verbatim from your
letter, is as follows:

"If the land for the establishment of a
new sub-experiment station is donated to the
A & M College, can the proceeds from the sale
of land and property that was abandoned be
used to construct buildings and other improve-
ments in connection with the establishment of
the new station?"

It is the opinion of this department that the
answer to this question should be resolved in the affirm-
ative with certain qualifications which are herein set
out. Our opinion is based on Articles 139, 140, and 143,
Vernon's Annotated Texas Civil Statutes, Revision of 1925,
Section 6 of Article 8 of the Constitution of Texas; and
Subsection 3 of the General Provisions of Chapter 377 of
Texas Session Laws, 1945, enacted by the Forty-ninth Leg-
islature in Regular Session.

Article 139, Powers of Board, provides as follows:

"The Board shall have power:

"1.  To establish sub-experiment stations at such places in this State as it shall deem proper in addition to those now in operation.

"2.  To abandon or discontinue any sub-station which may become undesirable for experiment purposes; and if deemed necessary to establish others in their stead at such places in the same county as it shall deem advisable.

"3.  To sell any land or other State property used in the operation of an experiment station when so abandoned, and to apply the proceeds of such sale in the purchase of other land and property for the establishment of experiment stations."

The first object and purpose of Paragraph 3 of Article 139 is clear.  The Board of Directors of A. & M. College is given the power to sell any land and other property of an experiment station which has been duly abandoned.  It seems definite that this power of sale includes the right to sell the land, buildings and other improvements and whatever equipment that was used in the operation of the abandoned station.

The second object of that paragraph, we believe, is to give the Board the power to use the proceeds from such sale for the establishment of other experimental stations.  The phrase "to purchase land and property"would seem to be merely descriptive and directive of the manner in which the proceeds for the establishment of experiment stations would be used.  We do not believe the Legislature intended to limit the use of the proceeds solely for the purchase of land and property in the establishment of an experiment station.  To so construe the phrase as a limitation on the use of the proceeds would, in effect, be giving the Board the power to sell buildings and other improvements erected on land which had been used for an experiment station, but would prevent the proceeds to be used for the same purpose in the establishment of a new station, and would force the Board to look to other funds

for necessary buildings and other improvements in the es-
tablishment of a new experiment station.  Such a result
was, in our opinion, not intended by the Legislature.  Ra-
ther they intended by this paragraph to allow the proceeds
to be used for the purchase of land and for whatever physi-
cal equipment and improvements that might be necessary to
the full and complete establishment of an experiment sta-
tion.

However, Paragraph 2 of Article 139, when read in
conjunction with Paragraph 3 of the same Article, requires,
in our opinion, the new sub-experiment station, which is es-
tablished with the proceeds from the sale of land and other
property of an abandoned experiment sub-station, to be lo-
cated in the same county of the sub-experiment station which
was abandoned.  That it was the intent of the Legislature
that this provision be mandatory is made clearer by a read-
ing of the Acts 1913, S.S., p. 98, Section 6, which reads
in part as follows:

". . .provided, however, no station shall be
abandoned and re-located beyond the bounds of the
county in which such station was originally lo-
cated."

Article 143 reads as follows:

"In the location of any experiment station,
said board may take into consideration and re-
ceive any donation, either in money, land or
other property, to be used in the operation,
equipment, or management of any such station,
and for experiment work, may lease such land,as
may, in its judgment, be necessary for any of the
purposes named in this chapter."  (Underscoring
ours)

We believe this article, by implication, author-
izes the establishment of an experiment station on donated
land.  The Board under its general power of sale in Article
139 would have the same power of sale with respect to any
land that is donated unconditionally and without limitation
as it would with respect to land acquired in any other man-
ner by the  Board for experiment stations; and no loss can
be seen by the erection of buildings and other improvements
on land received as a donation to be used as an experiment
station.  To prevent such proceeds from being so used would
necessitate the acquisition and use of other funds when an
experiment station was desired to be located or established

on donated lands.  Such, conceivably, could result in land, which was desired to be donated, being purchased in order to establish without an extended delay an experiment station thereon.  Certainly such was not the intention of the Legislature.  It is the opinion of this department that it was the legislative intent to permit such proceeds provided for in Article 139 to be used in the establishment of experiment stations on land received as a donation without condition or limitation under Article 143, when such land is located in the same county as was the land of the abandoned station from which the proceeds were derived.

The last sentence of Article 140 reads as follows:

"All funds received from the sale of station lands or property shall be deposited in the State Treasury and shall be paid out in accordance with the provisions of this chapter."

Under this statute the proceeds from the sale of land and other property of an abandoned sub-experiment station must be deposited in the State Treasury.  In order to withdraw these funds from the Treasury for the establishment of a new sub-experiment station it is necessary that it be done in pursuance of a legislative appropriation as required by the Constitution of Texas.

Article 8, Section 6 of that document provides in part as follows:

"No money shall be drawn from the Treasury, but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years. . ."

While the last sentence of Article 140 might possibly be construed as an appropriation authority to allow the withdrawing of such funds from the State Treasury, in the  face of the above constitutional provision and the repeated holdings of the courts of this State, it could not be authority for such an appropriation for a period longer than two years from the date of the enactment of Article 140, which was 1913.

We are of the opinion that authority for the withdrawal of such funds from the Treasury for the establishment of a new sub-experiment station is granted by Subsection 3 of the General provisions of Chapter 377 of Texas Session

Laws, 1945, enacted by the Forty-ninth Legislature in Regular Session. This Chapter deals with the biennial appropriations for A. & M. College and other educational institutions for the fiscal years ending August 31, 1946, and August 31, 1947.

Subsection 3 of the General provisions of this Chapter provides as follows:

"Institutional Receipts. No property belonging to any of the institutions herein provided for, or any agency thereof shall be sold or disposed of without the consent of its governing board, and all proceeds from the sale of such property, from labor performed from the sale of materials, crops and supplies, from fees, and any and all other receipts shall become and are hereby appropriated as maintenance or contingent funds to be expended under the direction and with the approval of the governing board having jurisdiction. Said governing boards are authorized to use out of the proceeds of said receipts and funds, in accordance with the provisions of this Act, such amounts as they shall deem necessary for the support, maintenance, operation and improvements of said institutions. Any balances remaining to the credit of any said institutional local funds at said institutions or in the State Treasury at the end of any fiscal year are hereby reappropriated for the above mentioned purposes for the succeeding year." (Underscoring ours)

It is our opinion that experiment stations of A. & M. College are included in the phrase "or any agency thereof." While the powers enumerated in this sub-section 3 are considerably broader than those given by Article 139, such Article controls over the appropriation provisions; and hence the powers of the board, insofar as experiment stations are concerned, are modified and controlled by Article 139. Such sub-section does, however, in our opinion appropriate the funds so that they can be withdrawn from the State Treasury for the establishment of new experiment sub-stations.

## SUMMARY

Proceeds from the sale of land and other property used in the operation of an experiment sub-station which has been duly abandoned must be deposited in the State Treasury, but can be withdrawn by the Board of Directors of A. & M. College for the construction of buildings and other improvements in connection with the establishment of a new experiment sub-station on donated land.  Such land donated, however, must be conveyed without any limitation or condition and must be located in the same county as was the land of the abandoned station or stations from which the proceeds for such improvements were derived.

Yours very truly,

APPROVED JAN. 18, 1947

*Price Daniel*
ATTORNEY GENERAL

HJB:jrb:wb

ATTORNEY GENERAL OF TEXAS

By *Harry J. Baker*
Harry J. Baker
Assistant